# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JASON JACKSON, | CASE NO. 3:10-cv-00052 |
| *Plaintiff,* | |
| | MEMORANDUM OPINION |
| v. | |
| CHRISTOPHER MICHALSKI, ET AL., | JUDGE NORMAN K. MOON |
| *Defendants.* | |

This matter is before the Court upon several motions to dismiss filed by Defendants (*see* docket nos. 14, 15, 17, 19, 21, 26, 44, 48, 51, 53, 55) and upon a motion requesting discovery on jurisdictional issues filed by Plaintiff (docket no. 105). Defendants assert under Federal Rule of Civil Procedure 12(b) a lack of personal jurisdiction, insufficient process, and a failure to state a claim for which relief can be granted. The issues have been fully briefed, and the parties were heard on June 22, 2011.

For the reasons stated below, I find that no personal jurisdiction exists over the defendants Christopher Michalski, Intercollegiate Studies Institute, Inc., and John Zmirak, and accordingly dismiss the complaint in its entirety as to those defendants. On the Rule 12(b)(6) motions to dismiss brought by Takimag.com, LLC and Richard Spencer, I will dismiss Counts XVII to XX (misappropriation of name or likeness) and Count XXV (copyright infringement) without prejudice; the remainder of the claims are meritless and will be dismissed with prejudice. The motion for additional discovery will be denied.

Case 3:10-cv-00052-NKM-BWC   Document 110   Filed 08/22/11   Page 1 of 33   Pageid#: 1303

# I. Background

Jason Jackson ("Plaintiff") filed this suit *pro se* on October 8, 2010, and amended his complaint on February 14, 2011. The named defendants are Christopher Michalski, Richard Spencer, Intercollegiate Studies Institute, Inc. ("ISI"), Taki Theodoracopoulos, Takimag.com, LLC, and John Zmirak (collectively, "Defendants"). The allegations, which I must accept as true, are as follows. This action arises out of the posting of an article entitled "Confessions of a Punk-Rock Traditionalist" on October 9, 2008 to Takimag.com, an "online magazine" that caters to "independent conservatives." Pl.'s Am. Compl. Ex. A. The article in question was available on the website in its original form until October 14, 2008, when it was revised as a result of Plaintiff's complaints. *Id.* at ¶ 3.[1] Although "Paul Santos" posted the article, *id.* at Ex. A, it is fairly implied in the amended complaint that Michalski authored the article, *see, e.g.*, *id.* at ¶ 8 (referring to "Mr. Michalski's plagiarized 'article'"); *id.* at ¶ 25.[2] The article describes Michalski's personal transformation from serving as the frontman of "a string of wildly socially unacceptable bands" to joining the "conservative movement." *Id.* at Ex. A. The article describes Michalski's bandmate, "Jason," as "a big, beer-heavy rugby player who, with or without medication, likes to be called 'Hawg.'" *Id.* The article also describes "Jason" as a "clinically schizophrenic bass player." *Id.* It states that "Jason introduced himself as Waygood Ellis, 'a TRUE son of the Confederacy!'" to an audience of concertgoers at a performance in Roanoke, Virginia. *Id.* The article also describes how Jason unveiled to the audience an art piece consisting of a wooden box with "prison bars [] completely wrapped in pornography. It was horrible beyond belief—not run-of-the-mill *Playboy* stuff but 'you're going to jail for that' nastiness." *Id.* Plaintiff is the "Jason" described in the article. *Id.* at ¶ 43. Plaintiff claims that

---

[1] The article in its original form remained accessible in a "Google cache" for over one year from its date of posting. Pl.'s Am. Compl. ¶ 65.
[2] "Paul Santos" is not a party to this litigation and may be an assumed name of Michalski.

"Waygood Ellis" is "a recognized and copyrighted" penname of his, *id.* at ¶ 11, and that "Hawg" or "Hog" is "a recognized nick-name of Plaintiff known among Mr. Jackson's intimates," *id.* at ¶ 12. Michalski "borrowed the idea, concept, and storyline of [the article] from an immediately prior phone conversation with Mr. Jackson," and from an unpublished short story. *Id.* at ¶ 25. The art piece referred to in the article is Plaintiff's artwork entitled *Untitled I- IX*, and Plaintiff alleges that any reasonable, prudent observer would not find the artwork to incorporate hardcore pornography. *Id.* at ¶ 67. The article also featured a photograph of Plaintiff. *Id.* at ¶ 44.

Two business entities and several of their employees were involved in the creation and posting of the article. Takimag.com, LLC apparently owned the website Takimag.com and employed Theodoracopoulos as "Editor and Publisher" and Spencer as "Managing Editor." *Id.* at ¶ 3. The second entity, ISI, supplied the article for free to Takimag.com, LLC through Michalski, who is employed by ISI as the Director of Sales and Marketing for ISI Books. *Id.* Zmirak is employed with both Takimag.com, LLC and ISI. *Id.*

Several of the causes of action arise out of events separate from the posting of the article. It is alleged in the complaint that Michalski "was clearly defaming Mr. Jackson's name through slander the entire period of his employment at ISI" through conversations with coworkers about Plaintiff. *Id.* at ¶ 9. Separately, the amended complaint asserts that Michalski, with the assistance of Zmirak, employed the names "Waygood" or "Waygood Ellis" on the websites of Amazon, Facebook, and Myspace. *Id.* at ¶ 13. The unspecified uses of Jackson's purported pennames "benefit[ted] ISI and Mr. Michalski in his employment and in his personal life." *Id.* at ¶ 18. Later in the amended complaint, it is asserted that Michalski used the name "Waygood Ellis" to create a false persona with the purpose of writing favorable reviews of ISI's books. *Id.* at ¶ 28. At least one such review was made of a book authored by Zmirak. *Id.* at ¶ 13.

The amended complaint contains sixty-six counts against Defendants. Plaintiff requests compensatory damages of $55 million plus interest and costs, punitive damages, and an injunction against Defendants "prohibiting future use of [Plaintiff's] name, nick-name, likeness, personal description or information, or pen-name, or any other property, in any way, shape, or form." Pl.'s Am. Compl. The litigation is stayed by court order pending resolution of the instant motions. Defendant Michalski filed a motion to dismiss pursuant to Rule 12(b)(2) (docket no. 14), a motion to dismiss pursuant to Rule 12(b)(4) (docket no. 15), and a motion to dismiss pursuant to Rule 12(b)(6) (docket no. 48). Defendant Spencer filed a motion to dismiss pursuant to Rule 12(b)(6) (docket no. 44). Defendant ISI filed a motion to dismiss pursuant to Rule 12(b)(2) (docket no. 17), a motion to dismiss pursuant to Rule 12(b)(4) (docket no. 19), and a motion to dismiss pursuant to Rule 12(b)(6) (docket no. 21). Defendant Takimag.com, LLC filed a motion to dismiss pursuant to Rule 12(b)(6) (docket no. 26). Finally, Defendant Zmirak filed a motion to dismiss pursuant to Rule 12(b)(2) (docket no. 51), a motion to dismiss pursuant to Rule 12(b)(4) (docket no. 55), and a motion to dismiss pursuant to Rule 12(b)(6) (docket no. 53).[3] Also presently before me is Plaintiff's motion for discovery on jurisdictional issues (docket no. 105).

## II. APPLICABLE LAW

### A. Federal Rule of Civil Procedure 12(b)(2)

To exercise personal jurisdiction over a nonresident defendant, the plaintiff bears the burden of making a prima facie showing that jurisdiction is authorized by the state's long arm statute and that the exercise of personal jurisdiction would be consistent with due process under

---

[3] Defendant Theodoracopoulos filed a motion to quash service (docket no. 29), which was granted by Magistrate Judge B. Waugh Crigler by order dated May 4, 2011. I will address Plaintiff's objections to the Magistrate Judge's ruling in a separate memorandum opinion and order.

the U.S. Constitution. *See Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004).[4] "[W]hen . . . the court addresses [personal jurisdiction] on the basis only of [the] motion papers, supporting legal memoranda and the relevant allegations of [the] complaint, the burden on the plaintiff is [] to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering [such] a challenge on [this kind of] record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citation omitted). But while "the allegations of the complaint must be accepted as true . . . [the] plaintiff cannot rest on these allegations in the face of specific contradictions contained in [the] defendant's motion and support[ing] [] affidavits." *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 398, 410 n.11 (E.D. Pa. 1981).

Virginia's long arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause. *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990). Thus, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Stover v. O'Connell Assocs.*, 84 F.3d 132, 135-36 (4th Cir. 1996). The Due Process Clause requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two forms of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colom., S. A. v. Hall*, 466 U.S. 408, 414-15 (1984). General jurisdiction requires "'continuous and systematic' contacts with the forum state, such that a defendant may be sued in that state for any reason,

---

[4] When a defendant challenges personal jurisdiction, the determination of jurisdiction is for the judge. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The trial court has three procedural alternatives for making its determination. It may: (1) determine jurisdiction on the basis of the complaint and affidavits alone; (2) order discovery in aid of the jurisdictional question; or (3) conduct an evidentiary hearing on the merits of the motion to dismiss. *See id.* at 676.

regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (citations omitted). Where a defendant's contacts with the forum state provide the basis for the suit, those contacts may establish specific personal jurisdiction. *Mitrano*, 377 F.3d at 407.[5] But a defendant's contacts "must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[W]hen the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident," a court "may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397-98 (4th Cir. 2003) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). The United States Court of Appeals for the Fourth Circuit has synthesized the due process requirements for asserting specific personal jurisdiction in a three-part test in which the court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

## B. Federal Rule of Civil Procedure 12(b)(4)

Where the procedural requirements of sufficient process are not satisfied, a court lacks power to assert personal jurisdiction over a defendant. *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002). The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure

---

[5] "The relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfie[s] due process." *English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990).

employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law. *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). Rule 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990). "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

### C. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). In sum, Rule 12(b)(6) does "not require heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950. Where a court is unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the dismissal should be with prejudice. *McLean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009). In other words, when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend. *Id.* (citing *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (affirming dismissal with prejudice where amendment would have been futile)).[6]

Although district courts have a duty to construe *pro se* pleadings liberally, a court is not obliged to ferret through a complaint, searching for viable claims. *See Holsey v. Collins*, 90 F.R.D. 122, 123-24 (D. Md. 1981) (observing that a voluminous, repetitive, and conclusory complaint "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be," and "imposes a similar burden on the court to sort out the facts now hidden in a mass of charges, arguments, generalizations and rumors"). In the context of Rule 8, it is clear that a plaintiff must provide enough detail to illuminate the nature of the claim and allow defendants to respond. *See Erickson*, 551 U.S. at 93-94. And, although district courts have a duty to construe *pro se* pleadings liberally, a *pro se* plaintiff must nevertheless allege facts that state a cause of action, and district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (adding that "[d]istrict judges are not mind

---

[6] Federal Rule of Civil Procedure 10(c) provides that a copy of a written instrument that is an exhibit to a pleading is deemed a part of the complaint. *Thompson v. Greene*, 427 F.3d 263, 268 (4th Cir. 2005). In evaluating a motion to dismiss, the court may consider documents extrinsic to the complaint if they are "integral to and explicitly relied on in the complaint." *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222-23 (4th Cir. 2009); *see also Sec'y of State v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 335 (E.D. Va. 2005). Here, Jackson explicitly referenced in his amended complaint several exhibits that were attached to it. It is appropriate to consider those documents for the purpose of deciding this motion.

readers"); *see also Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring) (stating that district court is not the *pro se* plaintiff's advocate, *sua sponte* developing statutory and constitutional claims the plaintiff failed to raise on the face of the complaint).

### III. PERSONAL JURISDICTION

### A. Defendant Michalski

Michalski asserts that the Court lacks personal jurisdiction over him because there is no basis for jurisdiction under Virginia's long arm statute, and there are insufficient minimum contacts with Virginia. Michalski resides in Pennsylvania and works in Delaware.[7] He argues that Jackson has failed to make out a prima facie showing of a basis for exercising jurisdiction over him. He claims, without any supporting affidavit, that he does not have any business in Virginia or solicit any business in Virginia, and that the posting of the article in question was in no way related to his employment. Plaintiff, who bears the burden of establishing jurisdiction over Michalski, takes the position that the posting of the article authored by Michalski on the Internet, where it was readily accessible by Internet users in Virginia, constituted a tortious act in Virginia. In other words, Michalski intentionally directed his tortious conduct—the creation of the allegedly defamatory article and supplying of it to a publisher of web content—toward Virginia by providing the article for publication on the Internet. Because the article was readily accessible from Virginia, it was effectively directed to Virginia, argues Jackson.

In the context of electronic contacts, a state may exercise judicial power over a person outside of the state when that person "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).

---

[7] Michalski has not submitted an affidavit to support this assertion. Nonetheless, this fact is not questioned.

Thus, "a person's act of placing information on the Internet" is not sufficient by itself to "subject[] that person to personal jurisdiction in each State in which the information is accessed." *Id.* at 712. The Fourth Circuit's decision in *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) is directly applicable to this case.[8] There, the court addressed whether a Virginia district court had personal jurisdiction over foreign defendants in a libel suit brought by the warden of a Virginia prison against two Connecticut newspapers. The warden's allegations stemmed from the newspapers' coverage of conditions in the prison, which housed numerous Connecticut prisoners. In their motion to dismiss for lack of personal jurisdiction, the newspapers pointed out that both publications were printed and distributed in Connecticut. One of the newspapers had no mail subscribers in Virginia, and the other had just eight. Neither solicited subscriptions from Virginia residents, and neither had officers or employees there. No one from either newspaper—not even the reporters—had traveled to Virginia to work on the articles. Two reporters made a few telephone calls into Virginia to gather information, but the newspapers otherwise had no direct contact with the Commonwealth. *Id.* at 259-60.

In response, the warden noted that the newspapers posted the allegedly defamatory articles on Internet websites that were accessible to Virginia residents. He also observed that the newspapers' websites contained real estate, employment, and other advertising content, and he argued that such content was designed to target and attract out-of-staters, such as Virginians. Thus, the warden contended, the Virginia court possessed personal jurisdiction over the Connecticut defendants because (1) the newspapers, knowing that the warden was a Virginia resident, intentionally defamed him in their articles; (2) the newspapers posted the articles on Virginia-accessible websites that were designed to attract an out-of-state audience; and (3) the

---

[8] In my summary of the *Young* case, I draw liberally from the Fourth Circuit's thorough description of the case set forth in *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 400 (4th Cir. 2003).

primary effects of the defamatory statements on the warden's reputation were felt in Virginia. *Id.* at 261-62. Despite the warden's showing of these Virginia connections, the court held that the Connecticut newspapers did not post materials on their Internet sites with the "manifest intent" of targeting readers in Virginia, and hence that a Virginia court lacked personal jurisdiction over the newspapers. *Id.* at 264. In rejecting the warden's argument and finding in favor of the defendant newspapers, the court reasoned that something more than posting the article and its accessibility to users in other states was needed to indicate that the newspapers purposefully (albeit electronically) directed their activity in a substantial way to Virginia. *Id.* at 263. Evidence of the purposeful focus on Virginia readers was lacking in light of the fact that "the [newspapers'] websites are not designed to attract or serve a Virginia audience" and "Connecticut, not Virginia, was the focal point of the [allegedly libelous] articles." *Id.* at 263-64. Because the "newspapers did not post materials on the Internet with the manifest intent of targeting Virginia readers," they "could not have 'reasonably anticipated being haled into court [in Virginia].'" *Id.* (quoting *Calder*, 465 U.S. at 790).

Applying the principles set forth in *ALS Scan* and *Young* to this case, I find that Michalski did not purposefully direct activity into Virginia with the manifested intent of interacting with others in the state. Neither the article that he authored nor the website on which the article was published targeted a Virginia audience. The article itself focused on Michalski's transition from a nonconforming "member of the Goth-club underground" to a religious, conservative parent of four children he was homeschooling. Although the article describes a concert that Michalski staged in Roanoke, Virginia for the opening of an art gallery there, the purpose of recounting the musical performance was not to provide information to Virginia residents about the art gallery or concert. Rather, it was meant to capture "an episode" from the

phase of Michalski's life in which he engaged in "confrontational performance art." Jackson appeared in the article because he was the lone member of Michalski's band who was willing to continue playing with Michalski. But the focus of the article was on the personal transformation of Michalski; Jackson was a secondary character. I observe nothing about the article that would lead me to believe it would be of particular importance to a Virginia reader, as opposed to a national audience. There is no indication that the website Takimag.com specifically reaches out to Virginia readers. Billed as "[t]he online magazine for independent conservatives," the screenshot of the Takimag.com website shows that its advertisers include the international retailer Amazon.com, and topics covered by the webzine are national in scope, such as "Iraq war," "Immigration," "Nationalism," "McCain," and "Obama." The mere creation of the article and the posting of it on the Internet, without more, does not meet the requirements for personal jurisdiction in this circuit. The activities undertaken by Michalski and/or Zmirak with the names "Waygood" or "Waygood Ellis" on the websites of Amazon, Facebook, and Myspace also do not constitute sufficient electronic contacts with Virginia to support personal jurisdiction over Michalski. These activities are barely detailed in the complaint, other than that Michalski used Jackson's penname to write a review of a book online. It is not alleged that any of this electronic activity was directed into Virginia to engage in interactions within the state or with Jackson.

Jackson asserts another ground for establishing specific jurisdiction over Michalski. He believes jurisdiction can be shown based upon Michalski's efforts to sell books in Virginia for his employer ISI. I observe that Jackson's amended complaint does not present any allegation that Michalski engaged in sales efforts in Virginia. Nonetheless, Jackson argues that Michalski "acts as the Director of Sales and Marketing for ISI Books, a large and substantial enterprise; it is beyond reasonable belief that Mr. Michalski as such has managed *not* to direct his Sales and

Marketing efforts to this state." Pl.'s Resp. to Def. Michalski's Mot. Dismiss Under Rule 12(b)(2) at 3. Michalski denies that he has or solicits any business in Virginia. Where it is Plaintiff's burden to make the prima facie showing of jurisdiction and Plaintiff has made no relevant allegations for this Court to construe in Plaintiff's favor, Plaintiff has probably failed to meet his burden. Because it is my duty to draw all inferences in favor of jurisdiction, and Michalski has not attested by affidavit to any specific facts to contest jurisdiction, I will proceed under the assumption that Michalski did conduct sales activities in Virginia.[9] The contacts with Virginia arising from his sales activities, however, do not form the basis for this suit, and therefore cannot support specific jurisdiction over Michalski. The second prong of the Fourth Circuit's specific personal jurisdiction test fails—the claims do not arise out of the purported activities directed at Virginia. *See Consulting Eng'rs*, 561 F.3d at 278.

Plaintiff also cannot show general personal jurisdiction. The level of contacts needed to confer general jurisdiction is "significantly higher than for specific jurisdiction." *ESAB Group*, 126 F.3d at 623. To show continuous and systematic contacts with the forum state, the defendant "must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." *Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 32 (1st Cir. 2010) (quoting 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.5 (3d ed. 2002)). Plaintiff only alleges in a conclusory fashion that Michalski's "activities in the forum state (Virginia) are clearly systematic and continuous." Pl.'s Am. Compl. ¶ 1(e)(i). In his argument, Jackson asserts that Michalski engaged in selling books to customers in Virginia, he made phone calls and sent

---

[9] Assuming this fact obviates the need for discovery on the actual extent of Michalski's business activities in Virginia.

emails to persons in Virginia, he attended conferences in Virginia, and he maintains websites through a business entity in his control that are accessible in Virginia. But there is no claim that any sales efforts in Virginia were so persistent, substantial, or longstanding as to satisfy the requirements for general jurisdiction. Plainly, general jurisdiction over Michalski does not exist based on these assertions. Further discovery on phone calls made by Michalski and visits made to Virginia would not be availing. The claims against Michalski will be dismissed for lack of jurisdiction.

### B. Defendant ISI

Jackson alleges that ISI "deliver[s] [its] products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state" and that ISI "has a healthy stream of products—books—that [it] sell[s] in the Commonwealth of Virginia." Pl.'s Am. Compl. ¶ 1(b). Jackson concludes that ISI's "activities in the forum state (Virginia) are clearly systematic and continuous." *Id.* at ¶ 1(e)(i). Jackson further asserts in his briefing that ISI has "a large number of financial supporters, with whom it corresponds in various ways, in Virginia." Pl.'s Resp. to ISI's Mot. Dismiss Under Rule 12(b)(2) at 3. According to the affidavit of Douglas Mills, the Executive Vice President of ISI, ISI is a non-profit corporation organized under the laws of the District of Columbia and located in Wilmington, Delaware. ISI has no office in Virginia, but it sells books to purchasers in Virginia, presumably through direct sales over the Internet and through brick-and-mortar retail booksellers.

The bar is set high for a plaintiff to show general personal jurisdiction over a defendant based upon the defendant's business sales in the forum state. ISI is not based out of Virginia, it does not have a physical location in Virginia, and there is no indication that it employs any sales agents in Virginia. *See Helicopteros Nacionales de Colom.*, 466 U.S. at 416 (observing as

relevant that defendant did not have a place of business in forum state); *ESAB Group*, 126 F.3d at 624 (finding significant that defendant maintained no sales agents in forum state). There are no claims that ISI warehouses goods in Virginia, maintains real or personal property in the state, or maintains a bank account in the state. *See Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (considering the aforementioned factors). It is firmly established that where a defendant does no more than advertise and employ salesmen in a forum state, the contacts are not sufficient to justify general jurisdiction. *ESAB Group*, 126 F.3d at 624; *Nichols v. G. D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993); *Ratliff*, 444 F.2d at 748. In *Nichols*, the Fourth Circuit held that general jurisdiction over a company in Maryland could not be shown even where that company employed thirteen Maryland residents as sales representatives and one Maryland resident as a district manager; kept automobiles, samples, and promotional materials in Maryland; had a one-time contract with a Maryland firm for drug research; held two regional and national meetings for district managers in the state; and had between nine million and thirteen million in annual sales in Maryland. 991 F.2d at 1199-1200. The level of ISI's business operations in Virginia does not approach the number of contacts the court deemed inadequate in *Nichols*. ISI's solicitation activities in Virginia are not continuous and systematic. Further discovery on the amount of sales ISI earns from Virginia consumers is unnecessary where there is no allegation or reasonable basis for asserting that a substantial proportion of ISI's business is derived from sales attributable to Virginia.[10]

---

[10] Plaintiff's only allegation is that the number of books sold in Virginia constitutes a "healthy stream." Pl.'s Am. Compl. ¶ 1(b). In Plaintiff's brief, he speculates that Virginia is among the top consumers of ISI books because "it has a large population of people who are interested in politics and the subjects that ISI specializes in." Pl.'s Resp. to Def. Michalski's Mot. Dismiss Under Rule 12(b)(2) at 3-4. On such a thin foundation, and in light of the lack of other connections between ISI and Virginia, I do not believe discovery on revenue derived from Virginia is warranted.

If general personal jurisdiction cannot be found, Jackson argues that ISI is subject to specific personal jurisdiction in Virginia based on the publication of the article and the use of the "Waygood" or "Waygood Ellis" names on Amazon.com and social media sites by Michalski. Although ISI did not engage in any of these activities, Jackson alleges that it "benefited" from the article's publication and the use of the "Waygood Ellis" penname. Pl.'s Am. Compl. ¶¶ 10, 13. ISI benefitted from the posting of the article by receiving "a *quid pro quo* from Mr. Spencer and Takimag.com for supplying a 'free' 'article' through one of ISI's employees." Pl.'s Am. Compl. ¶ 3. No further detail is provided about the "quid pro quo" arrangement. It seems that the penname was used to write a favorable review of a book published by ISI. In any case, a substantive inquiry into whether Michalski's actions can be attributed to ISI through his employment relationship to ISI and any benefit ISI received from his actions is not required to decide the jurisdictional question presented. As I explained above, the creation and posting of the allegedly defamatory article and the use of Plaintiff's penname on the Internet do not constitute electronic contacts with Virginia that were intentionally directed into the forum state. For the same reasons specific jurisdiction does not exist to hear the claims against Michalski, Plaintiff has failed to show that ISI has the requisite minimum contacts with Virginia to render the assertion of jurisdiction over ISI consistent with traditional notions of fair play and substantial justice.

### C. Defendant Zmirak

Plaintiff's arguments for specific and general personal jurisdiction over Zmirak have no more traction than they do for Michalski or ISI. According to the affidavit of Zmirak, he is a New Hampshire resident. He writes books that are sold throughout the United States and can be purchased in Virginia, and he writes articles that are published on the Internet and can be viewed

by people in Virginia. He is a freelance writer who contributes articles to the webzine Takimag.com, but he is not employed by Takimag.com, LLC. Zmirak did not write or publish the article in question, but the article was allegedly "shown" to him and it is claimed that he conspired with Michalski and Spencer in some unspecified way to bring the article to publication. Pl.'s Am. Compl. ¶¶ 3, 7. Zmirak is also vaguely implicated in the use of the names "Waygood" or "Waygood Ellis" on the Internet, as he allegedly "collaborate[d] in this matter." *Id.* at ¶ 13. Neither the publication of the article nor the use of the penname involved the targeting of electronic contacts to Virginia citizens, so specific jurisdiction cannot be found. In the alternative, Jackson urges the Court to exercise general jurisdiction over Zmirak on the basis of his book sales in Virginia. The authorship of books and articles that are sold nationwide and available for viewing on the Internet does not subject the author to jurisdiction in every state in which they are purchased or accessed without an additional showing of that person's continuous and systematic contacts with the forum state. The increasing commercial and electronic interconnectedness between the states does not herald the elimination of all boundaries on a state's ability to assert jurisdiction over a non-resident defendant, as jurisdictional limits are a consequence of territorial limitations on the power of the respective states. *ALS Scan*, 293 F.3d at 711. National sales and electronic accessibility of written materials alone do not warrant general jurisdiction under this circuit's precedents.[11] The suit against Zmirak will be dismissed for lack of personal jurisdiction.

## IV. Failure to State a Claim for Relief

Because Defendants Takimag.com, LLC and Spencer do not challenge the exercise of personal jurisdiction over them, any objections to such jurisdiction are waived. *See* Fed. R. Civ.

---

[11] Because there is no personal jurisdiction over Michalski, ISI, and Zmirak, I will not address their respective motions under Federal Rule of Civil Procedure 12(b)(4) claiming insufficient process or under Rule 12(b)(6) claiming failure to state a claim for relief.

P. 12(h)(1); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 394 (4th Cir. 2004) (en banc). Both Takimag.com, LLC and Spencer move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. Spencer was the managing editor of Takimag.com, LLC, the company that published the supposedly defamatory article that is the subject of this litigation. At the outset, the following claims are not alleged against either Spencer or Takimag.com, LLC, and therefore are dismissed for lack of jurisdiction: unauthorized use of name or picture pursuant to Virginia Code § 18.2-216.1 (Count XI); "use of a person's identity with the intent to coerce, intimidate, or harass" pursuant to Virginia Code § 18.2-186.4 (Count XVI); misappropriation of name or likeness (Count XXI); false designation of origin pursuant to 15 U.S.C. § 1125 (Count XXIV); copyright infringement pursuant to 17 U.S.C. § 102(a) (Count XXVI); contributory copyright infringement pursuant to 17 U.S.C. § 102(a) (Count XXVII); electronic theft pursuant to 17 U.S.C. § 506 (Count XXIX); "intentional interference with prospective advantage / unfair competition" (Count XXXI); conversion (Count XXXIII); "false personation" in violation of Virginia Code § 18.2-186.4 (Count XL); "false personation" in violation of Virginia Code § 18.2-186.3(B) (Count XLV); breach of contract (Count XLIX); breach of implied contract (Count L); fraud (Counts LII to LVII); and negligent misrepresentation (Counts LVIII to LX).

Jackson's claims for defamation per se (Count I), slander per se (Count II), libel per se (Count III), and defamation against property (Count LXV) are barred by the statute of limitations. To resolve claims brought under state law, a federal court must apply the choice of law rules of the forum state, in this case Virginia. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Virginia courts apply their own law "in matters that relate to procedure." *Hooper v. Musolino*, 234 Va. 558, 566, 364 S.E.2d 207, 211 (1988). Statutes of limitations are

considered matters of procedure in Virginia courts, unless they are so bound up with the substantive law of a claim that the limitations period is itself considered substantive. *Jones v. R. S. Jones & Assocs.*, 246 Va. 3, 6, 431 S.E.2d 33, 34-35 (1993). Statutes of limitation that apply to traditional rights of action in contract and tort are typically procedural. *Id.* Under Virginia law, a person who has been the subject of libel or slander can bring a cause of action for defamation. *Jackson v. Hartig*, 274 Va. 219, 227, 645 S.E.2d 303, 308 (2007). "Every action for injury resulting from libel, slander, insulting words or defamation shall be brought within one year after the cause of action accrues." Va. Code Ann. § 8.01-247.1. In a defamation claim, the one-year limitation period accrues on the date when the offending statement was made. *See Jordan v. Shands*, 255 Va. 492, 498, 500 S.E.2d 215, 218 (1998). Here, the article was first posted to the website on October 9, 2008, and remained available on the website in its original form until October 14, 2008. The slanderous statements were made around the time of the posting of the article.[12] Plaintiff filed this suit on October 8, 2010, well after the statutory deadline had expired.

Plaintiff argues that the principles of equitable estoppel should permit his claims related to defamation to proceed regardless of the applicable statute of limitations because of a "pattern of intentional misrepresentations on the part of Defendants," "the failure of Defendants to complete a contract [] regarding the removal of [the article] from the internet," and Plaintiff's desire not to bring separate suits for the many claims arising out Defendants' course of conduct. Pl.'s Am. Compl. ¶ 3. Jackson alleged that Michalski "initially promised that he would 'take down' the offending material immediately," but he did not do so until October 14, 2008, six days

---

[12] I recognize that the amended complaint states that Michalski was making defamatory statements "the entire period of his employment at ISI," which, without knowing when Michalski's employment at ISI terminated, if at all, does not necessarily place the tortious acts in October 2008. I am satisfied, however, that through oral argument the parties clarified that the defamatory statements supposedly were made around the time the article was posted.

after the article was posted.  *Id.* at ¶ 51.  Jackson adds that Michalski's written and oral statements to Jackson that Jackson should not have been concerned about the article and that the article was vetted per *The Chicago Manual of Style* lulled Jackson into a false sense of security and made Jackson feel like he was overreacting.  Pl.'s Resp. to Def. Michalski's Mot. Dismiss Under Rule 12(b)(6) at 3.

Equitable estoppel bars a statute of limitations defense by a defendant who, "by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct."  *United States v. Fid. & Cas. Co. of N.Y.*, 402 F.2d 893, 897 (4th Cir. 1968) (quoting *McWaters & Bartlett v. United States*, 272 F.2d 291, 296 (10th Cir. 1959)).  In order for the equitable estoppel doctrine to apply, a plaintiff must show that the defendant took "actions the [defendant] should unmistakably have understood would cause the [plaintiff] to delay filing his charge."  *Price v. Litton Bus. Sys.*, 694 F.2d 963, 965 (4th Cir. 1982).  Proof of fraud or deception is not required.  *Fid. & Cas. Co. of N.Y.*, 402 F.2d at 898.  Jackson has not alleged facts supporting a conclusion that the defendants took actions that they should have understood would cause Jackson to delay filing his charge.  Jackson does not elaborate on the content of the "intentional misrepresentations" made to him, and the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal."  *Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).  Any delay in removing the offending material before October 14, 2008, would not have materially delayed Jackson's timely filing of the suit.  Statements by Michalski that Jackson should not be concerned about the propriety of the article are not actions that Michalski should have expected to cause Jackson delay in bringing suit.  Further, the dates on which such statements were made have not been alleged.  Finally, Jackson's mere desire to bring

all of his claims after the expiration of the time to file suit is not a justification for equitable tolling. Therefore, equitable estoppel is inapplicable.

I next consider Jackson's claim for intentional infliction of emotional distress (Count IV), based on the posting of the article.[13]  In Virginia, the elements of a claim for intentional infliction of emotional distress are:  "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe."  *SuperValu, Inc. v. Johnson*, 276 Va. 356, 370, 666 S.E.2d 335, 343 (2008).  Jackson alleges that the article was posted with the intent to harm and such posting showed a "disregard of a substantial probability of causing extreme, emotional distress, which any reasonable, prudent person could easily see or discern."  Pl.'s Am. Compl. ¶ 6 (quotation mark omitted).  Plaintiff adds that the article caused him "grave, undue and severe pain, suffering, loss of reputation, and inextricable shock, humiliation, indignation and injury."  *Id.* at ¶ 6.

The court must determine, in the first instance, "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."  *Harris v. Kreutzer*, 271 Va. 188, 204, 624 S.E.2d 24, 34 (2006) (quoting *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974)).  "It is insufficient for a defendant to have acted with an intent which is tortious or even criminal."  *Id.*, 624 S.E.2d at 33.  Rather, "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*, 624 S.E.2d at 34.  I cannot find that the publication of this article satisfies the

---

[13] For tort actions, Virginia applies the law of the state where the tortious conduct or injury occurred.  *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing *Jones v. R. S. Jones & Assocs.*, 246 Va. 3, 5, 431 S.E.2d 33, 34 (1993) (stating that *lex loci delicti* is settled rule in Virginia)).  Plaintiff brought his tort claims under Virginia law, and Takimag.com, LLC and Spencer agree that Virginia law should apply.

outrageousness requirement. While Jackson is painted in an unfavorable light as a "beer-heavy," medicated, "clinically schizophrenic" musician, the focus of the article is not on attacking and humiliating Jackson. In fact, Jackson is not identified by his full name in the article. The tone of the article is lighthearted and jocular; many readers would not take it seriously or would find it self-deprecating. I recognize that other readers would find the description of Jackson and the association of Jackson with pornography and the Confederate States of America distasteful. But I do not hesitate to conclude that the decision to publish this article did not exceed all possible bounds of decency so that it was utterly intolerable in a civilized community. *See id.*, 624 S.E.2d at 33 (stating that the outrageousness requirement is aimed at "avoiding litigation in situations where only bad manners and mere hurt feelings are involved"). Moreover, the claim fails to plead the severity of the emotional distress. Liability for intentional infliction of emotional distress arises only when the emotional distress inflicted "is so severe that no reasonable person could be expected to endure it." *Id.* at 205, 624 S.E.2d at 34. Jackson has not alleged concrete symptoms of his emotional distress in any detail. His conclusory description of pain, suffering, and shock is insufficient. *See id.* (affirming district court granting of demurrer where plaintiff alleged she suffered mortification, humiliation, shame, disgrace, injury to reputation, and severe psychological trauma and mental anguish with symptoms including nightmares, difficulty sleeping, extreme loss of self-esteem, and depression, requiring psychological treatment and counseling).

I next consider several claims made by Jackson for invasion of his privacy. The four common law torts of invasion of privacy are "(1) unreasonable intrusion upon the plaintiff's seclusion, or solitude, or into his private affairs; (2) public disclosure of true, embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the

public eye; and (4) misappropriation of plaintiff's name or likeness for commercial purposes." *WJLA-TV v. Levin*, 264 Va. 140, 160 n.5, 564 S.E.2d 383, 395 n.5 (2002). Virginia Code § 8.01-40 codifies the misappropriation of a plaintiff's name or likeness for commercial purposes. *Id.* at 160, 160 n.5, 564 S.E.2d at 395, 395 n.5. By only codifying the last of the common law privacy torts, the Virginia General Assembly implicitly excluded the remaining three as actionable torts in Virginia. *Id.* at 395 n.5; *see also Brown v. Am. Broad. Co.*, 704 F.2d 1296, 1302 (4th Cir. 1983); *Falwell v. Penthouse Int'l, Ltd.*, 521 F. Supp. 1204, 1206 (W.D. Va. 1981). Where a plaintiff alleges that the defendant made unauthorized use of the plaintiff's name or image in a context that is false and would be highly offensive to a reasonable person, his remedy is to prove that the context was defamatory, and not that the use was a misappropriation. *WJLA-TV*, 264 Va. at 160 n.5, 564 S.E.2d at 395 n.5. Accordingly, Jackson's claims for "false light" (Counts V and VI) and for "intrusion into seclusion" (Count XXII) must be dismissed. Jackson's allegations of misappropriation of name or likeness under the common law (Counts XVII to XX) are improperly pled, as § 8.01-40 has displaced any common law remedy. Virginia Code § 8.01-40(A) provides that if a person's "name, portrait, or picture" is used for "advertising purposes or for the purposes of trade" without written consent, the person may maintain a suit in equity to prevent the use, and may sue and recover damages for any injuries resulting from such use. *Town & Country Props., Inc. v. Riggins*, 249 Va. 387, 394, 457 S.E.2d 356, 362 (1995). Because the claims were not brought under § 8.01-40, I will dismiss Counts XVII to XX, but without prejudice.

The claims for misappropriation of Jackson's name and picture and unlawful use of his identity brought under various Virginia criminal statutes are improper, as Virginia Code § 8.01-40 provides the only remedy for these harms. Thus, the allegations of unauthorized use of his

name and picture pursuant to Virginia Code § 18.2-216.1 (Counts VII to X), use of a person's identity with the intent to coerce, intimidate or harass in violation of Virginia Code § 18.2-186.4 (Counts XII to XV), and "false personation" in violation of Virginia Code §§ 18.2-186.3 and 18.2-186.4 (Counts XXXVI to XXXIX and XLI to XLIV) must be dismissed. None of these criminal statutes expressly provide for any private right of action imposing civil liability, and no serious argument has been advanced that I should recognize one. *See generally Vansant & Gusler, Inc. v. Washington*, 245 Va. 356, 359-61, 429 S.E.2d 31, 33-34 (1993).

I turn to the causes of action that pertain to the allegation that the content of the article—the same one Jackson found to be defamatory and that caused him shock, humiliation, and indignation—was conceived by Jackson and used without his permission by Michalski. According to the amended complaint, Jackson and Michalski had a phone conversation about the underlying events described in the article, the details of which Michalski had not been able to recall. The description of the artistic performance that Jackson recounted to Michalski formed "the idea, concept, and storyline" of the article Michalski wrote. Jackson claims the rendition of the event that he communicated to Michalski over the phone came from an unpublished short story. Jackson asserts that the short story was "*de facto* and *de jure* copyrighted," and he attached to his amended complaint a handwritten copy of the short story, entitled "The Last Stand." Pl.'s Am. Compl. ¶ 25, Ex. R. From what I can discern from reviewing the legible parts of the short story, no author is identified. In addition, Jackson asserts that his penname "Waygood Ellis," which is mentioned in the article, is a "'de facto' trademark through its continuous use and association with him, his literary production, and his person." *Id.* at ¶ 48. Based on these circumstances, Jackson brings two cause of actions under the Lanham Act, 15 U.S.C. § 1125, for "plagiarism—'false designattion [sic] of origin'" (Count XXIII) and for

"trademark infringement" (Count XLVI), and an action for copyright infringement in violation of 17 U.S.C. § 102(a) (Count XXV).

The Lanham Act claims are without merit. Section 1125(a) of the Lanham Act "created a federal remedy against a person who used in commerce either a 'false designation of origin, or any false description or representation' in connection with 'any goods or services.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003). "[T]he phrase 'origin of goods' [in § 1125(a)] . . . refers to the *producer* of the tangible goods that are offered for sale, and not to the *author* of any idea, concept, or communication embodied in those goods. To hold otherwise would be akin to finding that [§ 1125(a)] created a species of perpetual patent and copyright, which Congress may not do." *Id.* at 37 (emphasis added and citations omitted). Indeed, the Supreme Court held that reading section 1125(a) "as creating a cause of action for, in effect, plagiarism—the use of otherwise unprotected works and inventions without attribution— would be hard to reconcile with [the Supreme Court's] previous decisions." *Id.* at 36. Because Plaintiff's claim in Count XXIII is for plagiarism, and not for a false representation concerning the producer of goods offered for sale, it fails to state a claim for relief.

Plaintiff's trademark infringement theory fares no better. Although section 1125(a) of the Lanham Act does provide a federal cause of action for trademark infringement of unregistered marks, *id.* at 30, trademark protection precludes competitors only from using marks that are likely to confuse or deceive the public, *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 637 (7th Cir. 1993). *See also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) ("It is, of course, also undisputed that liability under [§ 1125(a)] requires proof of the likelihood of confusion."). Jackson makes no allegation that the use of the name "Waygood Ellis" in the article was likely to confuse a reader as to the origin or authorship of the article, and under the

facts alleged no confusion is possible. The article was posted on Takimag.com by Paul Santos. The name "Waygood Ellis" was not used to identify the author; rather, it was merely described in the article as a stage name for "Jason," a character in the article. The alleged mark was used only in the article's content. It was not employed to make any representation about the origin or nature of the article. Count XLVI has no merit and will be dismissed.

To establish liability for copyright infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *accord Silver Ring Splint Co. v. Digisplint, Inc.*, 543 F. Supp. 2d 509, 512 (W.D. Va. 2008). Takimag.com, LLC argues that the short story does not contain any notice of copyright ownership—such as the symbol ©, the word copyright, or the abbreviation copy; the year of publication; and the name of the copyright holder—hence the right to recover for infringement of the copyright is forfeited. Prior to March 1, 1989, whenever a copyrighted work was distributed or published by authority of the copyright owner, the copyright was forfeited if the owner did not include a notice of copyright on the work. *See Bell v. E. Davis Int'l, Inc.*, 197 F. Supp. 2d 449, 460 (W.D.N.C. 2002) (applying pre-1989 mandatory notice rule to case at hand while observing change in notice requirements for post-1989 suits). Jackson does not allege that the work was distributed or published. Regardless, the provision of notice of copyright was made optional in amendments to the copyright statute by the Berne Convention Implementation Act of 1988, Pub. L. No. 100-568, 102 Stat. 2853 (amending 17 U.S.C. § 101 *et seq.*). *Charles Garnier, Paris v. Andin Int'l, Inc.*, 36 F.3d 1214, 1219 (1st Cir. 1994). The copyright statute presently provides that whenever a work protected by the copyright statute is published by authority of the copyright owner, "a

notice of copyright as provided by this section *may be placed* on publicly distributed copies . . . ." 17 U.S.C. § 401(a) (emphasis added).

I proceed to address whether Jackson has successfully alleged a claim for copyright infringement. Under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, copyright protection is granted "in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 432-433 (4th Cir. 1986) (quoting 17 U.S.C. § 102(a)). "[A]ll that is needed to satisfy [the originality requirement under] both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.'" *Id.* at 438 (quoting *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102-03 (2d Cir. 1951)). "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. A copyright granted by the United States Copyright Office is prima facie proof of the validity of the copyright, including the existence of the elements of originality and fixation. *M. Kramer Mfg.*, 783 F.2d at 434. In the absence of a certificate of copyright issued by the Copyright Office, the burden remains on the plaintiff to allege that he owns a valid copyright. *See Bell v. E. Davis Int'l*, 197 F. Supp. 2d at 458. I find Jackson's cause of action wanting. Jackson did not allege that he wrote the short story from which he derived his explanation of the events,[14] or that the short story was original. Further, he failed to allege that

---

[14] I recognize that later in the amended complaint, in a count alleging conversion of property, Jackson does refer to the short story as his. Nonetheless, the Court and the parties should not be expected to have to comb through each page of the 91-page amended complaint to identify additional facts pertinent to the cause of action. *See Holsey*, 90 F.R.D. at 123-24.

the "idea, concept, and storyline" that Michalski borrowed were constituent elements of the short story that were original. "The *sine qua non* of copyright is originality." *Feist Publ'ns*, 499 U.S. at 345. It is a constitutional requirement that a work must be original to the author to qualify for copyright protection. *Id.* at 345-46. Because at this stage the defect appears curable through amendment, I will dismiss Count XXV without prejudice.

Jackson tacks on claims for conversion (Count XXXII) and unjust enrichment (Count LXI) based on the same set of facts as his copyright claim. A Virginia state law claim for conversion or unjust enrichment is preempted by federal copyright law if "(1) the work is within the scope of the subject-matter of copyright as specified in 17 U.S.C. §§ 102, 103, and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 535 (E.D. Va. 2005) (quoting *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1996)) (quotation marks omitted). The first requirement is met for both claims because Defendants' wrongful use of Jackson's rendition of the concert is the premise of both claims, and literary works are within the subject of copyright. The second requirement is met because the conversion and unjust enrichment claims are not qualitatively different from a copyright claim. *See Microstrategy*, 368 F. Supp. 2d at 536. The conversion and unjust enrichment counts are preempted and will be dismissed.

Jackson's claim for electronic theft under 17 U.S.C. § 506 (Count XXVIII) will be dismissed because that statute "is solely a criminal statute that does not provide a private cause of action." *Ashton-Tate Corp. v. Ross*, 728 F. Supp. 597, 602 (N.D. Cal. 1989), *aff'd*, 916 F.2d 516 (9th Cir. 1990); *accord Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 912-13 (11th Cir. 1986). Similarly, Jackson's claims for identity theft under 18 U.S.C.

§ 1028 (Counts XXXIV to XXXV) will be dismissed because that statute "is a criminal statute that does not provide a private cause of action." *Crawford v. Adair*, No. 3:08-cv-281, 2008 U.S. Dist. LEXIS 57283, at *5, 2008 WL 2952488 (E.D. Va. Jul. 29, 2008); *accord Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998).

In Count XXX, Jackson claims that the use of his "idea, concept, and storyline" in the article is actionable as "intentional interference with prospective advantage / unfair competition" under Virginia law. The elements of a cause of action for interference with a business relationship are: 1) the existence of a business relationship or expectancy, with a probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent the defendant's intentional misconduct, the plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to the plaintiff. *Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 289, 576 S.E.2d 752, 757 (2003). The amended complaint is wholly lacking in factual allegations to support this cause of action. No business relationship or expectancy is alleged, let alone one that the defendants knew about and intentionally interfered with to the detriment of Jackson. *See Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 710 (E.D. Va. 2003) (dismissing claim for failure to identify particular business expectancy); *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 391 (E.D. Va. 2002) (same). This claim will be dismissed.

The claims premised on negligence (Count XLVII) and gross negligence (Count XLVIII) are meritless. To state a claim for negligence, the plaintiff must allege the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage. *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003). A claim for gross negligence

requires an allegation that the defendant engaged in conduct that exhibited "the utter disregard of prudence amounting to complete neglect of the safety of another." *Volpe v. City of Lexington*, 281 Va. 630, 639, 708 S.E.2d 824, 828 (2011).  Although Jackson claims that there is a "special standard of care for publishing industry professionals," Pl.'s Am. Compl. ¶ 49, he neither identifies that legal duty nor provides any legal authority for that assertion.  To the extent that he claims the duty is established in statute, he does not identify any particular statute or provision.  He states that the duty was breached without identifying any specific act that constituted the breach.  The entire causes of action consist of conclusory legal accusations and are devoid of any underlying factual allegations to provide adequate notice to his adversaries of the claims being asserted against them.  *See Bell Atl.*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.") (citations and quotations omitted).  Thus, Jackson failed to make out a prima facie case of negligence or gross negligence.  Moreover, it is apparent from the briefing that Jackson is attempting to duplicate his defamation, copyright, and other statutory and common law claims under the guise of a negligence action.  *See* Pl.'s Resp. to Takimag.com, LLC's Mot. Dismiss Under Rule 12(b)(6) at 17 (citing to statutory and common law on plagiarism, copyright, privacy, and defamation in explaining basis of duty in tort).

The action for fraud (Count LI) fails to state a claim for relief for several reasons.  To state a claim for fraud, the plaintiff must allege (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.  *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316, 321 (2005).  Rule 9 of the Federal Rules of Civil Procedure provides, in part, that "[i]n alleging fraud . . . a party must state with particularity the circumstances

constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (2d ed. 1990)). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Id.* at 783 n.5. Jackson's allegation is that the article contains material factual misrepresentations about "Jackson, the origin of the 'article,' and a number of pertinent facts mentioned in the 'article'" intended to mislead Jackson and readers of the article. Pl.'s Am. Compl. ¶ 53. In the absence of additional allegations regarding the contents of the false representations made in the article, Jackson has not satisfied Rule 9's heightened pleading requirement, and his claim must be dismissed for failure to state a claim for relief. In addition, Jackson's reliance on the vaguely alleged misrepresentations cannot be shown on these facts—Jackson could not possibly have been misled about the origin of the article or about facts about himself or his musical performance, as he claims the article was borrowed from his own recounting of the events. It is no surprise that the damages alleged are not specified in any detail. Finally, though it has been pled that Michalski intended to make the false statements in the article in order to mislead Jackson, it is unclear how Spencer and Takimag.com, LLC could be held liable for fraud without similar allegations that they, too, knowingly misstated the facts to mislead Jackson.

Plaintiff brings three claims for "breach of good faith and fair dealing" (Count LXII to LXIV).[15] He alleges that "Michalski initially promised that he would 'take down' the offending material immediately," i.e., the references to Plaintiff in the article, in exchange for Plaintiff not

---

[15] The parties agree that Virginia law applies to the contract-related claims.

"notifying his employer or taking legal action." Pl.'s Am. Compl. ¶ 51. However, "shortly after the initial promise Mr. Michalski reversed himself" and it took days until the offending content in the article was removed, and over a year to remove the offensive references contained within the Google cache. *Id.* at ¶¶ 51, 65. Further, Michalski promised Plaintiff "not to use any of the offensive terms again," but later created "'Waygood Ellis' Myspace, Facebook, and Amazon pages linked to [Michalski] and his employer." *Id.* at ¶ 51. Plaintiff does not allege that either Spencer or Takimag.com, LLC were notified about the offensive material or agreed to remove it or refrain from using it again. Although Plaintiff asserts that Takimag.com, LLC is liable under a theory of respondeat superior, it is not alleged that Michalski was an employee of Takimag.com, LLC or that Michalski was acting as an agent for Takimag.com, LLC when he agreed to remove the offensive material. The basis for vicarious liability is not alleged on the facts. Further, Plaintiff does not direct me to any authority recognizing a claim for a breach of good faith and fair dealing in Virginia under these circumstances. This action cannot be sustained against Spencer and Takimag.com, LLC.

Finally, Jackson brings an action for trespass (Count LXVI) based on the interference worked by the publication of the article on Jackson's rights of possession and ownership of the artwork *Untitled I– IX*, which was described in the article. Jackson asserts that his pleasure in creating the piece of art has been measurably diminished by its depiction in the article as pornographic. In Virginia, a trespass is "an unauthorized entry onto property which results in interference with the property owner's possessory interest therein." *Cooper v. Horn*, 248 Va. 417, 423, 448 S.E.2d 403, 406 (1994). Because personal property is implicated in this claim, more pertinent is the tort of trespass to chattels, which occurs "when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization."

*Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 451-52 (E.D. Va. 1998) (applying Virginia law). A trespass to personal property is not actionable here, where no physical interference with the property is alleged and no other basis in law to sustain the count is argued. *See id.* at 454 (allowing claim because intermeddling with property consisting of a computer network involved "sufficiently 'physical' contact to constitute a trespass to property").[16]

## V. CONCLUSION

For the reasons set forth herein, Michalski's motion to dismiss under Rule 12(b)(2) will be granted, ISI's motion to dismiss under Rule 12(b)(2) will be granted, Zmirak's motion to dismiss under Rule 12(b)(2) will be granted, Takimag.com's motion to dismiss under Rule 12(b)(6) will be granted to the extent described in this opinion, and Spencer's motion to dismiss under Rule 12(b)(6) will be granted to the extent described in this opinion. Specifically, Counts XVII to XX and Count XXV, as alleged against Takimag.com, LLC and Spencer, will be dismissed without prejudice. The remaining claims asserted against Takimag.com, LLC and Spencer will be dismissed with prejudice. Jackson's motion for further discovery on jurisdictional issues will be denied. The remaining motions brought by Michalski, ISI, and Zmirak will be denied as moot.

An appropriate order will follow. The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record, and to Plaintiff.

Entered this _____22nd_____ day of August, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[16] To the extent Jackson alleges civil conspiracy, that claim is also denied. *See, e.g.*, Pl.'s Am. Compl. ¶¶ 3, 7, 10.